**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BENJAMIN P. HERSKOWITZ,** | : | **Civil No. 1:13-CV-431** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **COUNTY OF LEBANON,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Much preliminary litigation in federal court now turns on construing the heightened pleading standards announced by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), which eschew pleadings that are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and instead enjoin courts to:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal at 679.

There is, however, a risk which lurks within these heightened pleading standards. In some instances these pleading standards, which were designed to curb litigation based formulaic assertions of claims, can lead to the opposite result, motions to dismiss which rest upon formulaic assertions that well-pleaded facts are simply talismanic recitals of a cause of action, and reasonable inferences are mere conclusory statements.

The above-captioned action presents an employment dispute between Benjamin P. Herskowitz, who had been employed as the Hazardous Materials Chief of Lebanon County prior to being terminated on November 10, 2012. Specifically, the plaintiff alleges that his employment was terminated for unlawful retaliatory and discriminatory reasons, in violation of federal and Pennsylvania law. Additionally, the plaintiff claims that during his employment the defendant interfered with his right to exercise leave benefits under the Family Medical Leave Act in order to care for his wife during and after her pregnancy, and to help care for his infant son who suffered from certain serious health conditions post-delivery. The plaintiff also claims that his employer retaliated against him because he attempted to exercise his rights under the FMLA.

The defendant has filed a partial motion to dismiss the complaint, arguing that the plaintiff's claims for discrimination and harassment fail at the pleading stage for lack of sufficient factual allegations, and improper reliance upon "hollow" legal conclusions. Upon consideration, we disagree.

The complaint, read as an entire narrative, alleges facts that adequately claim discrimination, retaliation, and interference with the plaintiff's rights in violation of state and federal law. Given this commonsense reading of the 37 page, 169 paragraphs set forth in the plaintiff's complaint, the defendant's motion to dismiss, in many respects, seems to simply rely upon a recitation of the pleading standards that have been enunciated and explained in recent years by the Supreme Court and the United States Court of Appeals for the Third Circuit, without demonstrating how those legal benchmarks apply to the actual pleading filed in this case. In short, this motion does not demonstrate that the plaintiff's complaint fails to meet these pleading standards, and cannot make such a showing since the complaint actually contains a careful factual recital.[1]

_____

[1] By way of example, the defendant suggests that the complaint is "not sufficiently clear" as to whether the plaintiff's Title VII claim in Count I is based upon that statute's "participation" clause or the "opposition" clause. (Doc. 10) Yet this casual suggestion that the complaint is vague or unclear is flatly belied by numerous allegations in the complaint itself. Thus, Count I of the complaint alleges that "Defendant knew that Plaintiff *opposed gender discrimination* in the workplace . . . ,"(Doc. 1, ¶ 102) (emphasis added), and that "Title VII prohibits

Because we find that the plaintiff's 169-paragraph complaint has clearly, sufficiently, and plausibly alleged facts adequate to support his claims of discrimination, retaliation, and interference with the exercise of his rights, and because the complaint otherwise satisfies the standards imposed on pleadings in federal civil actions, we will recommend that the defendant's motion to dismiss be denied, and that the parties be directed to proceed to mediation to see whether the

---

retaliation in the workplace against employees . . . who have otherwise *opposed practices made unlawful under Title VII . . .*," (id., ¶ 103) (emphasis added). The very next paragraph of the complaint states that "Defendant retaliated against Plaintiff in response to Plaintiff's *opposition to* unlawful gender discrimination." (Id., ¶ 104) (emphasis added.) And although these consecutive paragraphs make clear the plaintiff's Title VII opposition theory in this case, the complaint continues in its clear explanation of this particular claim: "Defendant retaliated against Plaintiff in response to Plaintiff's *opposition to unlawful gender discrimination* that negatively affected the terms and conditions of a female co-worker's employment." (Id., ¶ 105) (emphasis added.) Paragraphs 106 and 107 also make clear that the plaintiff is pleading a claim under Title VII's "opposition" clause. Thus, other than to denigrate the sufficiency plaintiff's pleading, or to suggest that the plaintiff's complaint is impermissibly vague, the defendant's rhetorical suggestion is undermined by the clarity of the pleading itself.

Likewise, the defendant later makes this assertion: "In this case, Herskowitz does not deny falsifying his time records; rather, he simply believes he should not have been terminated for that act." (Doc. 10, at 15) This is simply a misrepresentation of what the complaint actually says. (Doc. 1, ¶¶ 78-79) ("Plaintiff did not intentionally misrepresent on his time sheets the time he worked for Defendant. Rather, Plaintiff completed time sheets as he had been instructed and trained by Defendant, as more fully set forth above.")

4

plaintiff's claims are susceptible to a mutually agreeable resolution.[2]  If mediation is unsuccessful, we recommend that the parties be directed to commence discovery, during which they will have an opportunity to determine whether the plaintiff is able to develop evidentiary support for his various theories of relief.

## II.  <u>BACKGROUND</u>

According to the detailed complaint filed in this action, the plaintiff began his employment with Lebanon County in May 2008. (Doc. 1, ¶ 12)  Sometime thereafter, the plaintiff became the defendant's Hazardous Materials Chief.  In this capacity, the plaintiff's immediate supervisor was Daniel Kauffman, who served as the defendant's Emergency Management Director.  In connection with his employment as Hazardous Materials Chief, the plaintiff received annual performance ratings that either met or exceeded expectations, and prior to November 10, 2010, the plaintiff had never received any written discipline.  (<u>Id.</u>, ¶¶ 14-17)

In the fall of 2009, the plaintiff's wife became pregnant. (<u>Id.</u>, ¶ 25)  During her pregnancy, the plaintiff's wife experienced health complications, and plaintiff was as a result forced to miss time from work intermittently to care for her.  (<u>Id.</u>, ¶¶ 26-27)  The defendant was aware that the plaintiff was missing work relating to his wife's

---

[2]  According to the minute sheet entered after the case management conference on June 19, 2013, the parties have agreed to participate in mediation following resolution of the pending motion to dismiss.  (Doc. 17)

complications during her pregnancy, and plaintiff submitted a written request to use leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654.

The plaintiff's son was born on June 5, 2010. (Doc. 1, ¶ 40) Shortly after he was born, the plaintiff's son began suffering from serious health conditions that required continuing medical treatment and surgery. (Id., ¶¶ 41-43) In addition, during this same post-delivery period, the plaintiff's wife developed other serious medical conditions that required the plaintiff to miss additional time from work in order to help care for his family. (Id., ¶¶ 44-50)

In July 2010, the plaintiff was served with a subpoena to testify at an unemployment compensation hearing of a colleague. (Id., ¶ 60) The plaintiff notified that defendant's Director of Human Resources to inform her of his receipt of a subpoena, and that he intended to testify regarding what he perceived to be the defendant's misogynistic attitudes, and to attest that his colleague had been treated less favorably than similarly situated men. (Id., ¶¶ 63-66) In addition, the plaintiff informed the Director of Human Resources that he opposed the gender discrimination that he had witnessed, and that he reported his opposition to this conduct to his supervisor, Mr. Kauffman, on several prior occasions. (Id., ¶ 67)

On July 14, 2010, the plaintiff testified at his co-worker's unemployment compensation hearing. During his testimony, the plaintiff testified about gender

discrimination he had observed directed at his colleague, and that he had reported this discrimination to his supervisor on multiple occasions. (Id., ¶¶ 69-72)

On October 20, 2010, the Unemployment Compensation Board of Review ("UCBR") issued an Order establishing that the plaintiff's female colleague possessed a necessitous and compelling reason to separate from employment with the defendant by virtue of being "repeatedly subjected to abusive treatment at the hands of co-workers for which she complained to the Director [Mr. Kauffman] . . . [and] the employer failed to take effective action in addressing [her] concerns." Two weeks after this Order was issued, the defendant suspended the plaintiff's employment; one week later, the plaintiff was fired. (Id., ¶¶ 74-76)

The defendant claimed to have terminated the plaintiff's employment because he intentionally misrepresented on his timesheets that he worked hours resulting in overtime compensation to which he was not entitled. (Id., ¶ 77.) The plaintiff disputes that he intentionally misrepresented his timesheets the time he worked for the defendant. (Id., ¶ 78.) The plaintiff also contends that the defendant knew that managers similarly situated to the plaintiff completed their timesheets in the same manner as the plaintiff, but were not terminated as a result. (Id., ¶¶ 80-82.) Moreover, the plaintiff claims that the defendant knew that managers similarly situated to the plaintiff falsified their timesheets, but were not terminated on account

of this conduct, and were actually treated more favorably than the plaintiff. (Id., ¶¶

83-86)

The plaintiff alleges that his supervisor, Mr. Kauffman, harbored

discriminatory animus towards him for various reasons. (Id., ¶¶ 88-89) The plaintiff

avers that as a result of this animus, Kauffman subjected the plaintiff's work to

heightened scrutiny, falsely reported that the plaintiff had falsified his timesheets, and

fabricated a basis upon which to commence an investigation into the manner in which

the plaintiff maintained his time records, among other matters. The plaintiff claims

that his supervisor retaliated against him because he had testified truthfully at his

colleague's unemployment hearing, or because of his efforts to avail himself of

FMLA-protected rights.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a

complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief

can be granted. The moving party bears the burden of showing that no claim has been

stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is

appropriate only if, accepting all of the facts alleged in the complaint as true, the

plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on

its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no

set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. <u>Id.</u> at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting <u>Twombly</u>, 550 U.S. 544, 555).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

As the court of appeals has observed: "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' <u>Iqbal</u>, 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id</u>. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

IV.  **<u>DISCUSSION</u>**

> A.  **Plaintiff's Complaint Adequately Pleads a Claim for Retaliation Based Upon His Alleged Opposition to Conduct Made Unlawful Under Title VII**

The defendants first endeavor to have Count I of the plaintiff's complaint dismissed, arguing that the plaintiff failed to plead facts sufficient to allege that he suffered retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq.

Title VII provides, in pertinent part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of its employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  To make a *prima facie* case of retaliation under Title VII's opposition clause, a plaintiff must show that (1) he engaged in activity protected by Title VII, (2) the employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.  Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).  As the plaintiff notes in his opposition brief, the United States Supreme Court has explained that "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity."  Crawford v. Metro Gov't of Nashville and Davidson County, Tennesee, 555 U.S. 271, 276 (2009).

The plaintiff "may rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the adverse action taken against him."  Marra

v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). However, the Supreme Court has also recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Southern Med. Ctr. v. Nassar, __ U.S. __, 133 S. Ct. 2517, 2533 (June 24, 2013); Verma v. Univ. of Pennsylvania, 2013 WL 4010237, __ F. App'x __ (3d Cir. Aug. 7, 2013).

In its initial brief, the defendant insisted that the plaintiff was relying exclusively on a temporal connection between his allegedly protected conduct, and his eventual suspension and termination from his employment, in order to satisfy the causation element of the foregoing test. Seizing on this reading of the complaint, the defendant noted that although there is no bright-line test that will demonstrate causation based on temporal proximity alone, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Yet, determining whether temporal proximity will be sufficiently suggestive to establish causation is necessarily dependent on the facts of each case. Case law from the Third Circuit – all of which the defendant relies upon – reflects this.

12

Compare Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (employee discharged two days after filing EEOC complaint sufficient evidence of temporal causation) with Moore v. City of Philadelphia, 461 F.3d 331, 352 (3d Cir. 2006) (adverse activity over two months following lawsuit sufficient to establish causation) and Leboon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (finding that a gap of three months between protected activity and the adverse action, without more, insufficient to create an inference of causation). For this reason, the Third Circuit has underscored that "our pronouncements regarding temporal proximity and causation need to be assessed with the understanding that the relative evidentiary impact of temporal evidence may vary depending upon the stage of the McDonnell Douglas proof analysis, and the procedural circumstance. We caution, therefore, that each case must be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000).

Notably, each of these cases came before the Court of Appeals following motions for summary judgment and fully developed factual records – not on a motion to dismiss, with no evidentiary record, as we are considering in this case. Id. Moreover, we emphasize that the passage of time alone generally not legally conclusive proof against a plaintiff's retaliation claim. See Robinson v. Se. Pa.

13

Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993). This is because it is causation, rather than temporal proximity, that is the relevant element of a plaintiff's Title VII retaliation claim, and temporal proximity is simply one way in which a plaintiff may be able to demonstrate causation. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997).

As plaintiff correctly notes, where the time between the protected activity and the alleged adverse action is not so abbreviated as to be unusually suggestive of causation, courts will look to the intervening period to see whether there is other evidence that may support a showing of causation, including antagonistic conduct or animus against the employee, or pretextual reasons given by the employer for the adverse conduct. See, e.g., Marra, 497 F.3d at 302; Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997) (finding sufficient causal connection based on a "pattern of antagonism" during intervening two-year period between protected activity and adverse action); Farrell, 206 F.3d at 280-81 (examining inconsistent treatment of the plaintiff and other employees, which gave rise to inference of causation when considered as a whole).

For example, in Marra the court found a sufficient pattern of antagonism to support a finding of causation in a claim of retaliation, where during the nine-month period between the protected activity and the eventual adverse action: (1) the

plaintiff's computer had been vandalized; (2) he had been excluded from a meeting; (3) a colleague had been reassigned over the plaintiff's objections; and the plaintiff's supervisor had given him a "look of disgust" after learning that the plaintiff had testified against the employer. Marra, 497 F.3d at 302.

Where a plaintiff couples the timing of adverse action with a showing that the employer's given reason for the adverse action was pretextual may also be sufficient to establish a prima facie case of retaliation. See, e.g., Kellerman v. UPMC St. Margaret, 317 F. App'x 290, 293 (3d Cir. 2009) (reversing district court grant of summary judgment in favor of employer, and observing that "the timing of [the plaintiff's] termination combined with evidence of a pretextual explanation for his termination is sufficient to establish a prima facie case of retaliatory dismissal."); Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) (finding temporal proximity of three months to be suggestive of causation when considered together with the defendant's admitted irritation with the plaintiff for engaging in protected activity); Farrell, 206 F.3d at 291 (examining record as a whole to find inference of causation); Woodson, 109 F.3d at 291 (finding the record contained sufficient evidence to support a retaliation claim where there was a pattern of antagonism and disparate treatment during a two-year period between the protected activity and the adverse action).

In this case, which comes before the Court to test the sufficiency of the complaint, and before any meaningful discovery has been undertaken, we find that the plaintiff's allegations are sufficient to state a claim for unlawful retaliation. The plaintiff alleges that he was suspended from his job a mere two weeks after the defendant learned that the unemployment compensation board issued a ruling that appears to have credited the plaintiff's testimony that his co-worker had been subjected to repeated instances of unlawful discriminatory conduct, which the defendant failed to address. Only one week after this ruling came down, the plaintiff was fired. (Doc. 1, ¶¶ 74-76)

In addition to the temporal connection between this the plaintiff's testimony, the board's ruling and the ultimate termination of his employment, the plaintiff's complaint alleges with specificity the names and job titles of the defendant's managers who were allegedly treated more favorably than the plaintiff, (id., ¶ 20); alleges that these employees completed their timesheets in a manner similar to the plaintiff, and that the defendant was aware that these employees had completed their timesheets similarly to the plaintiff but did not take action against them, (id., ¶¶ 80-82); alleges that the defendant knew that other managers had falsified time sheets and forged payroll records but were not terminated, (id., ¶¶ 83-86); and flatly denies that the plaintiff engaged in such conduct. (Id., ¶¶ 78-79). We find that these additional

and well-pleaded allegations are hardly "hollow legal conclusion[s]," (Doc. 19, at 4), but are plainly substantial allegations of fact on which the plaintiff relies to claim that the defendant subjected him to unlawful retaliation for opposing conduct made unlawful by Title VII.

Given these careful, detailed factual recitals, the defendant's repeated insistence that the complaint is a mash of legal conclusions instead of factual allegations is wholly unpersuasive. At this early stage of the litigation, we find that the complaint plainly satisfies the pleading requirements of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court and the United States Court of Appeals for the Third Circuit, and thus we must recommend that the defendant's motion to dismiss the plaintiff's Title VII retaliation claim be denied.

## B. The Complaint Contains Allegations Sufficient to Support the Plaintiff's Claim that His Termination Violated Pennsylvania Public Policy

The defendant also argues that the plaintiff's act of testifying before a unemployment agency referee pursuant to subpoena, and allegedly being terminated in part for that act, is insufficient to support a claim for wrongful discharge under Pennsylvania law. We disagree.

As a general rule, employees in Pennsylvania are deemed to be at-will, and there is no common-law cause of action against an employer for termination of an at-

will employee.  See Clark v. Modern Group Ltd., 9 F.3d 321, 327 (3d Cir. 1993); cf. Nix v. Temple Univ., 596 A.2d 1132, 1135 (Pa. Super. Ct. 1991) (under Pennsylvania law an employee of a private sector employer "can be terminated for good reason, bad reason, or no reason at all.").  However, in Geary v. United States Steel Corp., 319 A.2d 174 (Pa. 1974), the Pennsylvania Supreme Court recognized that an exception to the at-will doctrine will be recognized in instances where the discharge of an at-will employee would offend a "clear mandate of public policy."  Id. at 185.

Although courts will determine whether an employee's discharge violates a clearly mandated public policy on a case-by-case basis, Dugan v. Bell Telephone of Pennsylvania, 876 F. Supp. 713, 725 (W.D. Pa. 1994), the Third Circuit has provided some general guidance in this field.  Accordingly, it has been held that an employee's discharge will offend clear mandates of public policy if the discharge results from conduct of the employee that is required by law, or from the employee's refusal to engage in conduct prohibited by law.  See, e.g., Clark, 9 F.3d at 330-32; Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1344 (3d Cir. 1990); Woodson v. AMF Leisureland Centers, Inc., 842 F.2d 699, 701-02 (3d Cir. 1988).

Thus, although the public policy exception has been interpreted narrowly, an at-will employee may state a claim for wrongful discharge where the complaint alleges conduct that "strikes at the heart of a citizen's social rights, duties and

responsibilities." Turner v. Letterkenny Fed. Credit Union, 505 A.2d 259, 261 (Pa. Super. Ct. 1985). Accordingly, the exception has been found applicable when, for example: (1) an employee was fired for serving on a jury, Reuther v. Fowler & Williams, Inc., 386 A.2d 119, 120 (Pa. Super. Ct. 1978); (2) an employee was fired for reporting violations of federal regulations to the Nuclear Regulatory Commission, Field v. Philadelphia Electric Co., 565 A.2d 1170, 1180 (Pa. Super. Ct. 1989); and (3) an employee was fired for producing work documents in response to a subpoena, Keiser v. North American Life Insurance Co., No. 85-0266, 1986 WL 4829, at *1-2 (E.D. Pa. April 18, 1986). Likewise, and of particular relevance to this case, another federal court has found that a plaintiff's allegations that he was fired for testifying truthfully at a workers' compensation hearing in response to a subpoena were sufficient to state a claim for wrongful discharge under Pennsylvania law. See Russell v. Strick Corp., No. 97-806, 1997 WL 381584, at *6 (E.D. Pa. July 9, 1997).

In this case, we agree with the plaintiff that he has adequately alleged facts to claim that he was suspended and later terminated in response to testifying against the defendant pursuant to a subpoena issued in connection with an unemployment compensation proceeding. (Doc. 1, ¶¶ 115-123) Additionally, we do not embrace the defendant's assertion that the public policy exception is inapplicable in this case because the plaintiff was terminated for a legitimate reason.

This defense relies upon a contested assertion of fact relating to the defendant's motivation, which we are urged to embrace as a matter of law on a motion to dismiss. This we cannot do. As noted above, the defendant's assertion that the plaintiff has not denied falsifying his time records is belied by the complaint itself, where the plaintiff alleged unambiguously that "at no time did plaintiff intentionally misrepresent his working hours on any timesheet or otherwise falsify his timesheets." (Id., ¶ 96.) Accepting this allegation as true for purposes of considering the defendant's motion to dismiss, we cannot find that the plaintiff has admitted to engaging in wrongful conduct that might have justified adverse action taken against him. Because the plaintiff has denied engaging in the very conduct the defendant's claim as a basis for terminating his employment, and because we find that the plaintiff's act of testifying pursuant to subpoena could support a claim for wrongful discharge under Pennsylvania law, we must recommend that the defendant's motion to dismiss this particular claim should also be denied.

## C.     Plaintiff Has Adequately Pleaded a Claim for FMLA Retaliation

The defendant also maintains that the plaintiff has not adequately alleged facts to support his claim that he was retaliated against after he sought to avail himself of his rights under the Family and Medical Leave Act in order to care for his wife and infant son, both of whom experienced serious health complications during 2009 and

2010. In making this argument, the defendant relies on its interpretation of the complaint as a collection of conclusory allegations rather than plausible factual assertions. Because we find that the complaint is replete with well-pleaded facts, we disagree with the defendant's interpretation of this pleading.

Under the FMLA, it is unlawful to retaliate "against any individual for opposing any practice made unlawful by the [FMLA]." 29 U.S.C. § 2615(a)(2). The Third Circuit has held that the FMLA's prohibition on retaliation protects usage of FMLA leave just as it protects opposition to unlawful FMLA practices and participation in FMLA proceedings. Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 147 (3d Cir. 2004). Thus, in order to state a claim for retaliation under the FMLA, a plaintiff must show that: (1) he engaged in activity protected by the FMLA; (2) he suffered an adverse employment action; and (3) a causal link exists between the adverse action and the plaintiff's exercise of his rights under the FMLA. Conoshenti, 364 F.3d at 146.

In this case, at this early stage of the litigation, the plaintiff's allegations clearly satisfy this standard. The complaint contains allegations to show that the plaintiff's wife and infant child suffered from serious health conditions; that the plaintiff missed work intermittently to help care for them; that the employer knew that the plaintiff's spouse and son had serious health conditions; that the plaintiff's absences to help care

for them were on account of an FMLA qualifying basis; and that the defendant nevertheless retaliated against the plaintiff for engaging in activity protected by the FMLA. (Doc. 1, ¶¶ 25-51) While the defendants characterize this claim as being impermissibly conclusory, we read the claim to present sufficient factual allegations to raise an inference of retaliation, and to be sufficient at the pleading stage to state a claim upon which relief could be granted. The motion to dismiss this claim relies upon a skeptical and narrow interpretation of the complaint, which is precisely the opposite standard that we apply when reviewing motions to dismiss pursuant to Rule 12(b)(6). In cases, such as this one, where the plaintiff has included sufficient plausible factual detail to support his claim, the facts alleged must be accepted as true, and reasonable inferences drawn in his favor. Applying this familiar standard, it is submitted that the plaintiff has pleaded adequate facts to state a claim for FMLA retaliation, and this claim should also survive the defendant's motion to dismiss.

### D.    Plaintiff's PHRA Retaliation Claim Should Not Be Dismissed

The Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951-963, makes it unlawful for an employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this Act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this Act." 43 P.S. § 955. The parties

agree that the PHRA is to be interpreted in a manner identical to federal anti-discrimination laws except in those instances where there is something specifically different in its language that requires that it be treated differently. See, e.g., Woodson, 109 F.3d at 920. Because we have already concluded that the plaintiff's claim for Title VII retaliation is sufficient to state a claim, we likewise find that the plaintiff has adequately pleaded a parallel claim under the PHRA, and, therefore, recommend that the defendant's motion to dismiss this claim be denied.

## V.  RECOMMENDATION

Accordingly, for the foregoing reasons, it is hereby RECOMMENDED that the defendant's motion to partially dismiss the complaint (Doc. 9) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of October 2013.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge